SUBURBAN HOSPITAL ASSOCIATION, INC. *v.* MEWHINNEY

[No. 162, September Term, 1962.]

*Decided January 29, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Joseph G. Simpson, Jr.,* with whom were *Vivian V. Simpson, H. Algire McFaul* and *Simpson & Simpson* on the brief, for appellant.

*James E. Hogan,* with whom were *Arthur J. Hilland* and *Ferdinand J. Mack* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

In this malpractice case the appeal is from a judgment after denial of motions for a directed verdict and for a judgment n.o.v. on behalf of the appellant, defendant below, by the Circuit Court for Montgomery County (Shure, J.). Appellant had made a motion for directed verdict at the close of the appellee's (plaintiff below) case, which was denied by the lower court. After putting on its case, appellant then renewed its motion on the ground that no evidence legally sufficient to sustain a verdict for the plaintiff had been offered. The motion at the close of all the evidence was also over-ruled. Upon return by the jury of a verdict in favor of the appellee for $4,000, a motion for judgment n.o.v. was filed, which was denied and judgment entered on the verdict.

The facts are not in dispute. The appellee suffered on October 24, 1956, a severe laceration of her left hand by a broken test tube in the course of her employment as a laboratory technician. The laceration was at the base of the proximal phalanx of her left index finger. She applied a sterile towel to the wound to control the bleeding and then proceeded to Suburban Hospital, in company with one of her co-workers, Hannah Waters, for further treatment. They arrived at the emergency room of the hospital in about fifteen minutes, and were met by the nurse in charge of the emergency room, who directed her to a stretcher in the room. Within a few minutes, a Dr. DeJesus, the medical resident on duty, arrived. He was

a native of the Philippine Islands, and received most of his medical training in that country, although he had previously served an internship at St. Francis Hospital, New York, N. Y. The appellee told Dr. DeJesus she believed she had cut the tendon in her finger and that she wanted him to check it to see if this had happened. She further told him that if the tendon was cut, she did not want the wound sutured, because she wanted the tendon to be taken care of immediately. She repeated this several times, the doctor only signifying his answer by saying "it's O. K." The doctor treated the wound by injecting novocain and proceeded to clean up and close it by means of black silk thread sutures. The appellee and Mrs. Waters both testified as to not being able to understand what Dr. DeJesus was saying because of his accent. After treatment, the appellee was told by a nurse to see a Dr. Abramson in three days. The emergency room record of her treatment includes a diagnosis of "laceration left index finger" only and does not mention a severed tendon.

Dr. Abramson saw the appellee at the stated time and diagnosed severed tendons. From October 27, 1956, until March 25, 1957, she received treatment at frequent times by Dr. Abramson at his office and at the hospital. On March 25, 1957, the appellee underwent a tendon graft operation by Dr. Abramson at Georgetown University Hospital. After several months of treatment, physiotherapy, and a second operation it was determined that the treatment was not successful, and on June 10, 1959, a Dr. Frey performed an arthrodesis, or fusion of a joint, which for all practical purposes rendered the finger completely rigid beyond the joint at the base of the finger. Mrs. Mewhinney was left-handed.

To properly understand the appellee's claim of negligence in the trial below, it is necessary to set forth the proper medical treatment of the injury sustained by the appellee, as brought out by expert testimony in the trial. Dr. Abramson testified on cross-examination that the usual treatment for a severed sublimis tendon and profundus tendon is to close the wound at the first treatment and at a later date, re-open the hand and attempt a tendon graft in order to restore the tendons to a

usable state. The waiting period varies from three weeks to six months, or longer. Another surgeon, Dr. Johnson, an expert witness for the appellant, agreed that this method is the preferred or "majority rule" treatment. On cross-examination, he stated that there is another method, used by the minority of qualified surgeons, whereby the tendons are joined immediately at or soon after the time of the first treatment, and then the wound is closed. He knew only the name of one physician who used this method, a Swiss surgeon, but stated that there were others. This method is known as primary repair, while the previously described method is called secondary repair. Dr. Johnson further testified that in any case, the preferred technique is to close a wound as soon as possible in order to discourage infection. Dr. Johnson and Dr. Abramson were both qualified surgeons.

The basis of appellee's claim in the lower court was that the resident in charge, Dr. DeJesus, by failing to correctly diagnose severed tendons in her hand and by not heeding her request to not close the wound if tendons were severed, negligently caused the disability to her left index finger which she has suffered. She claimed that the failure to properly diagnose prevented her receiving the primary method of tendon repair.

The question presented on appeal by appellant is: did the lower court err in submitting the case to the jury at the conclusion of the entire evidence; or in the alternative should the lower court have granted the appellant's motion for judgment n.o.v.?

It is settled in Maryland that the burden of proof in a malpractice case is on the plaintiff to show a lack of the requisite skill or care on the part of the physician and that such want of skill or care was a direct cause of the injury; if proof of either of these is wanting, the case is not a proper one for submission to the jury. *Lane v. Calvert,* 215 Md. 457, 462, 138 A. 2d 902; and cases cited therein. General rules of negligence apply to malpractice cases, as well as to ordinary claims of negligence. Therefore, "to constitute actionable negligence, there must be not only causal connection between the negli-

gence complained of and the injury suffered, but the connection must be by a natural and unbroken sequence, without intervening efficient causes, so that, but for the negligence of the defendants, the injury would not have occurred. It must not only be a cause, but it must be the proximate cause." *State, Use of Kalives v. Baltimore Eye, Ear, & Throat Hospital, Inc.,* 177 Md. 517, 527, 10 A. 2d 612. Applying these principles to the present case, and assuming without deciding that Dr. DeJesus was negligent in not correctly diagnosing severed tendons in appellee's finger, was there sufficient evidence presented to justify the issue being presented to the jury as to whether his negligence was the proximate cause of the injury suffered? We think not.

It is apparent that the present state of appellee's finger is due to the failure of the operations to correct the original injury. In order to justify appellee's claim that Dr. DeJesus' negligent treatment was the proximate cause, it must have been shown that his original treatment was a contributing cause of surgical failure of repair. The expert testimony, both by appellee's witnesses and those of the appellant, indicates that the preferred treatment by the majority of qualified surgeons is to close the wound and at a later date re-open it in order to repair the severed tendons. No evidence was introduced to show that Dr. DeJesus was negligent in the original closing of the wound. The doctor who actually attempted the repair did not comment on Dr. DeJesus' original treatment as being damaging to his later repair operation. There was no evidence presented to show that the primary method guaranteed any greater success than the secondary method. A careful reading of the testimony would lead one to believe that this type of surgery, whether primary or secondary, is a very delicate operation and is often not as successful as would be desired. It is evident that the appellee had the benefit of the accepted surgical procedure by highly qualified surgeons. Her present condition is due only to the fact, unfortunate as it may be, that even in this day of modern medicine, many operations by qualified surgeons do not correct the condition treated due to the fault of nothing more than the nature of

the injury. Under these circumstances, the jury should not have been allowed to speculate as to whether the method not used would have corrected the condition, when the method used did not. The evidence did not support such a conclusion. "In matters of proof we are not justified in inferring from mere possibilities the existence of facts; there must be proof of the essential facts to fix liability upon a party charged with the commission of a wrongful act." *Fink v. Steele,* 166 Md. 354, 363, 171 Atl. 49; and cases cited therein.

*Judgment reversed without a new trial, costs to be paid by appellee.*