## TEMPCHIN *v.* SAMPSON ET AL.

[No. 425, September Term, 1970.]

*Decided May 13, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Edward B. Layne, Jr.*, with whom were *McInerney, Layne & McCormick* on the brief, for appellant.

*Henry E. Weil*, with whom were *Shapiro, Weil & Jacobs* and *Melvin M. Belli* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

This is a sad case. The appellant, an experienced optometrist, characterized by a leading ophthalmologist as "the most competent optometrist I have ever dealt with," was found by the jury, permissibly and justifiably in our view, to have been guilty of professional negligence that was a proximate cause of damage to the eyes of the appellee, a young woman, that may well end in blindness in one eye and possibly in the other.

The sole contention of the appellant is that Judge Moorman erred in ruling that there was sufficient evidence of negligence to go to the jury. We are not persuaded, finding that there was ample evidence.

The appellant Stanley Tempchin is a practicing optometrist, licensed by the Board of Examiners of Optometry for the State of Maryland, and so held himself out. Code (1971 Repl. Vol.), Art. 43, § 372, defines the permitted practice of optometry as :

> "the employment of any means, except the use of drugs, medicine or surgery, known to the science of optics for the purpose of determining, correcting and prescribing by means of lenses for any optical condition existing in the human eye, and also the employment of any means, except the use of drugs, medicine or surgery, for the purpose of detecting diseased conditions."

Section 381 of Art. 43 makes it "unlawful for any per-

son to knowingly sell to or prescribe glasses for persons with diseased eyes except it be with their knowledge and consent or on an order of or advice from a registered physician."

Enid Deborah Cook (Mrs. Sampson at the time of trial) was troubled because her eyes tired when she read for a time and because an examiner of the Department of Motor Vehicles advised her to have her eyes examined before she sought a renewal of her driver's license. Her aunt took her to Dr. Tempchin to obtain glasses. Both were aware that he was an optometrist and was not an ophthalmologist. As part of the examination, Dr. Tempchin looked at the internal structures of the eyes with an ophthalmoscope and detected on the lens of each eye what he described as spots or opacities, the abnormality being greater in the right eye. Enid and her aunt both say he told them the spots were evidences of incipient cataracts. Both testified that they inquired as to the need or desirability of consulting a doctor and that they were told that they need not do so as he would check the patient's eyes each year for two or three years and would recommend medical advice when it was needed. Dr. Tempchin prescribed glasses which the patient bought and attempted to use without relief. Enid's eyes deteriorated very rapidly and painfully and some eleven days after her examination and four days after she picked up her glasses, her mother on her own initiative took Enid to an ophthalmologist who immediately diagnosed her condition as a form of uveitis. His diagnosis was confirmed that day by a sub-specialist in the medical specialty of ophthalmology, and that night Enid was taken to the hospital for intense and massive treatments with cortisone and other drugs.

After an extended period of treatment, including a stay at the National Institute of Health, her condition improved but the long range prognosis is probable eventual blindness in the right eye and possible blindness in the left. The ophthalmologist to whom Enid went eleven

days after Dr. Tempchin discovered the abnormal or pathological condition of her eyes, testified that he could say with reasonable medical certainty that if he had seen her on September 23, the day Dr. Tempchin saw her, or soon thereafter, instead of October 4, the use of proper drugs, begun at the earlier time would have prevented the acute stage of the disease that had progressed so rapidly and done so much damage by October 4 when he saw and treated her.

The liability of an optometrist to a patient is to be tested by standards analogous to those used to test physicians and surgeons—"whether or not he did fail to exercise the amount of care, skill and diligence as [an optometrist] which is exercised generally in the community * * * in which he was practicing by [other practitioners] in the same field." *State, Use of Solomon v. Fishel,* 228 Md. 189, 195. See *Lane v. Calvert,* 215 Md. 457, 462; *Johns Hopkins Hospital v. Genda,* 255 Md. 616; 70 C.J.S. *Physicians & Surgeons* § 41, p. 947; 41 Am. Jur. *Physicians & Surgeons,* § 88, p. 206; *Fink v. Steele,* 166 Md. 354; *Hardy v. Dahl* (N.C.), 187 S. E. 788; *Kahn v. Shaw* (Ct. App. Ga.), 16 S.E.2d 99.

There was expert testimony from Dr. Tempchin himself, from the ophthalmologist to whom Enid went for treatment, and from another optometrist called by Dr. Tempchin that optometrists practicing in Montgomery County ordinarily and customarily, if not routinely, refer a patient in whom they discover a pathological condition to a physician for treatment as part of their duty and obligation as optometrists. See *Evers v. Buxbaum,* (D. C. Cir.) 253 F. 2d 356, 361. That this is so flows almost necessarily from the limitations the statutes put on the optometrist. He may and should detect disease but he may not treat it.

The case turned essentially on whether Dr. Tempchin did or did not refer Enid to an ophthalmologist and the parties recognized and accepted this proposition.

Judge Moorman charged the jury:

"it is the duty of optometrists to refer their patients to a physician for a pathological disease or a pathological condition which they realize exists or ought to recognize.

"Now, if you find that the Defendant found a pathological condition and under all the circumstances seasonably and timely informed the patient thereof and he recommended and suggested or directed the patient to obtain competent medical assistance, then the Defendant performed his duty and if you so find, your verdict must be and should be for the Defendant on all the allegations of negligence.

"If, on the other hand, you find that the Defendant found a pathological condition and failed to seasonably and timely inform the patron thereof and [to recommend] the patron obtain competent, medical assistance and such failure was the proximate cause of the injuries complained of, then you should find a verdict for the Plaintiff upon the ground of negligence."

These instructions were accepted without exception or objection by Enid and Dr. Tempchin, who on the stand had acknowledged the duty to refer but had defended on the ground that he fully performed that duty. He testified that after his examination he told Enid and her aunt that Enid should be seen by an eye specialist and that he suggested a Dr. Dubroff, a qualified ophthalmologist, and that days later he told her mother the same things. This testimony was flatly denied by Enid, her aunt and her mother, and evidently was not believed by the jury since they found specifically, on an issue, that Dr. Tempchin had been negligent. To make this finding the jury had to believe the testimony of the witnesses for the claimant, including that of competent and qualified experts, and that testimony was sufficient prima facie to

meet the standards necessary to show professional malpractice and resulting damage.

*Judgments affirmed, with costs.*