## KRUSZEWSKI *v.* HOLZ

[No. 322, September Term, 1971.]

*Decided May 10, 1972.*

---

1. For translation and source see *Heller v. Segner*, 260 Md. 393, 395 (1971), opinion by Hammond, C. J.

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*George W. Shadoan,* with whom were *Shadoan & Mack* on the brief, for appellant.

*William A. Ehrmantraut* with whom were *Donahue & Ehrmantraut* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This case deals with what apparently is becoming a proliferating phenomenon in this country—suit for professional malpractice. The appellant, Helen B. Thoresen Kruszewski, instituted this action in the Circuit Court for Frederick County (Barrick, J.) against her physician, Richard G. Holz, appellee, alleging negligence in medical treatment. The doctor, in a jury trial, was exonerated of all charges and this appeal follows.

In the fall of 1967, appellant, then a forty-seven year old woman, after having undergone four unsuccessful D. & C. procedures, consulted Dr. Holz, a specialist in obstetrics and gynecology.[1] She complained of irregular and unusually frequent menstrual periods in which she encountered heavy bleeding and severe pain. The doctor, after thoroughly examining his patient, recommended still another D. & C. treatment which was performed one week later. This procedure alleviated her discomfort temporarily but within a few months she again experienced these same difficulties. In mid-May of 1968, in addition to her continuing menstrual problems, the appellant detected a small lump on her left breast. Despite this, Mrs. Kruszewski did not revisit her physician until June 3, 1968 at which time she complained anew of menstrual problems and also repined about the existence of the breast lump. During this visit the possible use of hormone treatment to regulate the bleeding was discussed, but with the presence of the lump Dr. Holz

---

1. D. & C. is an abbreviation for a dilatation and curettage operation which consists of a dilation of the cervix and a scraping of the womb. It is sometimes performed in an effort to correct unexplained bleeding.

thought it desirable to first have the nodule evaluated. He therefore, referred his patient to a general surgeon, Dr. Robert Thomas, for examination and consultation. The surgeon examined appellant and suggested that she be admitted to the hospital for a biopsy to determine if the growth was malignant. Appellee, after discussing the patient's problems with Dr. Thomas, decided the administration of hormonal therapy was not advisable. Instead he recommended that since appellant had to enter the hospital anyway, while there, if the lump was found to be benign, he, assisted by Dr. Thomas, would perform a hysterectomy. Mrs. Kruszewski approved this plan even though Dr. Holz warned her that the hysterectomy was major surgery and complications could arise.

Appellant was admitted to Frederick Memorial Hospital on June 30, 1968 and there signed a standard form granting consent to operate which in part read:

> "2. The nature and purpose of the operation, possible alternative methods of treatment, the risks involved, and the possibility of complications have been fully explained to me. I acknowledge that no guarantee or assurance has been made as to the results that may be obtained."

On July 1, Dr. Thomas made an excisional biopsy of her left breast and when the growth was found to be benign then, as planned, Dr. Holz performed the hysterectomy. There were no apparent complications during surgery and following an uneventful convalescence the patient was discharged on July 9 and went home. A few days later Mrs. Kruszewski experienced post-operative complications with the leakage of urine through her vagina. She stated that as a result, she telephoned Dr. Holz on July 15 to inform him of this new condition. The physician denied receiving this call and testified that the patient did not contact him until July 23, at which time he immediately ordered her to the hospital for treatment. In any event, on that latter date, Dr. Holz determined

the urine leakage was caused by a fistula, or hole, in the bladder and referred his patient to Dr. Crouch, a urologist. Drs. Crouch and Holz originally thought the difficulty may have been caused during the hysterectomy by a suture which injured the bladder but the urologist, after further examination, changed his diagnosis and concluded the leakage resulted from a hole which developed in a weak spot in the bladder wall. Before it was eventually stopped two surgical operations were required.

Mrs. Kruszewski then instituted this malpractice suit against Dr. Holz. In a three count declaration she first alleged that the physician negligently injured her bladder during the hysterectomy; she next claimed that Dr. Holz improperly delayed post-operative treatment after he was told of the leakage; and finally, that appellee was negligent in failing to inform her adequately of the possible risks of and alternatives to the operation.

At trial both sides agreed, as they should, that Dr. Holz was required to adhere to the same standard of care in treating his patients as was practiced by other physicians engaged in this specialty in the community. *Tempchin v. Sampson,* 262 Md. 156, 159, 277 A. 2d 67 (1971) ; *Johns Hopkins v. Genda,* 255 Md. 616, 258 A. 2d 595 (1969). There is disagreement, however, as to what is necessary to satisfy that standard. Appellant's expert, Dr. Harvey Jorgenson, testified that a physician would be negligent if he placed a suture in the bladder during a hysterectomy and failed to recognize and correct the error immediately. He further stated that, in his opinion, Dr. Holz did not adhere to the standard of care normally exercised by physicians because he did not completely inform his patient of all possible complications and risks involved prior to obtaining her consent to perform the hysterectomy. Appellee's experts, Drs. Dumler and Novak, agreed that it would be negligent for a physician to unintentionally place a suture in the bladder and leave it uncorrected after an operation but they testified that, in their estimation, such was not

the case here. These experts also testified that the probable cause of the urine leakage was a thin bladder wall further weakened by the operation and was not the fault of appellee. Additionally, they stated that it was not standard procedure for a physician in Dr. Holz's community to do more than advise his patient that a hysterectomy is major surgery with possible risks and complications attendant.

The trial judge submitted the case to the jury on five special issues all of which were answered in the negative against appellant. On appeal Mrs. Kruszewski claims that reversible error was committed in the following instances:

(i) when Judge Barrick refused to permit appellant to cross-examine Dr. Thomas, a major defense witness, about possible prejudice, while allowing appellee to extensively interrogate her witness, Dr. Jorgenson, concerning his past participation in other malpractice litigations;

(ii) when the court refused to allow Mrs. Kruszewski during the trial to remove an exhibit so that it could be scientifically analyzed;

(iii) when the trial judge erroneously summarized the facts during his jury instructions;

(iv) when the court allowed the appellee's experts to answer improper hypothetical questions;

(v) when Judge Barrick presented in an incorrect manner the special issues which were submitted to the jury.

We shall discuss these arguments in order but let us state at the outset that we find no reversible error was committed.

### (i)

Mrs. Kruszewski's first contention is that the trial

court erred when it permitted the defense to cross-examine a witness for the purpose of showing his possible bias while arbitrarily denying her this same right. Specifically, appellant argues that though counsel for Dr. Holz, over objection, had been allowed to extensively interrogate her witness, Dr. Jorgenson, concerning his recent participation in several malpractice cases, this same leeway was not extended to her when she sought to question Dr. Thomas, a defense witness, about his previously being a party to a malpractice suit in which appellee's counsel was his attorney. It is claimed that these two rulings in combination constituted an abuse of discretion. It is well settled law in this State that exploratory questions on cross-examination are proper when they are designed to affect a witness' credibility, test his memory or exhibit bias. *Shupe v. State,* 238 Md. 307, 311, 208 A. 2d 590 (1965) ; *Kantor v. Ash,* 215 Md. 285, 290, 137 A. 2d 661 (1958) ; *Ager v. Baltimore Transit Co.,* 213 Md. 414, 427-28, 132 A. 2d 469 (1957). But it is recognized that the scope, range and extent of such interrogation rests in the sound discretion of the trial court. *Shields v. State,* 257 Md. 384, 392, 263 A. 2d 565 (1970) ; *Ridgeway, Inc. v. Seidman,* 243 Md. 358, 364, 221 A. 2d 393 (1966) ; *Mezzanotte Const. Co. v. Gibons,* 219 Md. 178, 181, 148 A. 2d 399 (1959). Here, it was unnecessary for Dr. Thomas to be further questioned in order to demonstrate his prejudice in favor of appellee. The jury was already cognizant of a possible bias since it had been shown that the two physicians were colleagues who had collaborated in the treatment of Mrs. Kruszewski. While not necessarily improper, this proffered testimony, assuming its relevancy, would merely have been cumulative. We do not find that there was an abuse of discretion when the trial court prohibited this interrogation.

### (ii)

At the close of the second day of this three day trial appellant asked permission to remove an exhibit that Dr. Thomas claimed was his office record listing three of

the dates and reasons he treated Mrs. Kruszewski. Appellant contends that she should have been permitted to subject this exhibit, a single note card, to scientific analysis to determine if its entries were actually made on the dates indicated. This request was apparently made in the hope that such analysis would buttress her post-operative negligence claim and discredit Dr. Thomas' testimony which tended to support appellee's contention that he was not informed about the urine leakage until July 23. However, in seeking this permission appellant did not say how long such a test would take nor whether the progress of the case would be affected. Furthermore, no explanation was offered as to why the analysis was not performed prior to trial. In any event, even Mrs. Kruszewski agrees, as she must, that the determination of whether the request should have been granted rested in the sole discretion of Judge Barrick. There has been no showing that he abused this judgment. *Hughes v. Averza,* 223 Md. 12, 18-19, 161 A. 2d 671 (1960); *cf. Evans v. Howard,* 256 Md. 155, 161, 259 A. 2d 528 (1969). This is especially true in light of the fact that under the Maryland deposition and discovery rules (Ch. 400), appellant had an opportunity before the commencement of trial to have the card analyzed but neglected to do so. *Hughes v. Averza, supra.* We therefore find no merit in this claim.

(iii)

Mrs. Kruszewski's next argument is that the trial judge incorrectly and prejudicially related a portion of the evidence in his jury charge. The comment complained of was:

> "The second issue has to do with failing to recognize and immediately treat the injury. There again there is testimony from Dr. Jorgenson that the injury should have been recognized at the time and it was not, and therefore it was a deviation from the standard of care, while the other doctors, particularly Drs. Novak

and Dumler, testified that it was not, so far as they were concerned, a deviation from the standard of care."

After the court's instruction, appellant's counsel, among other objections, took exception to that particular statement. In a bench conference the following colloquy occurred:

"[Appellant's counsel]: . . . [T]he Court instructed the jury that Drs. Novak and Dumler testified that in their opinion it was not negligence to fail to recognize the injury to close the suture, but both of these men testified that they didn't—particularly Dumler—that they didn't believe a suture did go through the bladder but admitted on cross if it had then he would have been required to recognize——

THE COURT: That goes to the factual situation, and I will instruct the jury further that what I say about the facts is my recollection and if they have a different recollection of the facts they should use theirs.

[Appellant's counsel]: I have nothing further."

As a result of this dialogue Judge Barrick informed the jury:

"Now, also, in making my remarks I did comment on some of the facts in the case and I instructed you in the beginning of my instructions that you should not rely on my recollection of the facts. If you should find that the doctors testified contrary to the way I said they did, or if there are any facts at all I have mentioned to you in my instructions here to you, if your recollection is different from mine please use your own, and you are obligated to rely on your own and not mine. Anything I said about the facts is only trying to help you to reach a decision and is not binding on you in any way."

It is apparent from the record that at the conclusion of the bench conference appellant did not indicate any dissatisfaction with the court's proposed manner of rectifying the alleged misstatement. In fact her counsel seemed totally mollified. Similarly, following the supplemental jury charge no further objection was registered. Since, from all appearances, there was nothing to suggest the contrary, Judge Barrick could assume that his additional instruction was satisfactory to everyone. It is our opinion, assuming appellant accurately interpreted the complained of remark and that in fact it was erroneously made, the supplemental instruction cured any possible prejudice which may have resulted. As we said recently in *Morris v. Christopher*, 255 Md. 372, 378, 258 A. 2d 172 (1969), "The charge to the jury must be considered as a whole and the Court will not condemn a charge because of the way in which it is expressed or because an isolated part of it does not seem to do justice to one side or the other." *State v. Foster*, 263 Md. 388, 397, 283 A. 2d 411 (1971) ; *Simco Sales v. Schweigman*, 237 Md. 180, 188, 205 A. 2d 245 (1964) ; *Christ v. Wempe*, 219 Md. 627, 638, 150 A. 2d 918 (1959) ; *Mezzanotte Const. Co. v. Gibons, supra* at 182. Here, when viewed in its entirety, we find no error in the court's instruction.

Appellant seems to make a subsidiary argument under point (iv) which is more appropriately answered now. She apparently suggests that the trial judge committed other prejudicial error in instructing the jury when he unfavorably contrasted her single expert witness against the multiple experts of the appellee. But if this be the claim it is completely frivolous and deserving of only the briefest comment. Judge Barrick in his instructions to the jury clearly informed them that no consideration was to be given to the number of witnesses testifying for either side. He said:

"You should not weigh the number of doctors who testified against one side or the other, because one witness may supply sufficient testi-

mony to prove the facts in any particular case. So numbers is not important in determining the testimony."

Nothing more on this issue need be added. *Cf. Drug Fair v. Smith,* 263 Md. 341, 356, 283 A. 2d 392 (1971).

### (iv)

The next contention Mrs. Kruszewski makes is that the trial court erred in permitting appellee's expert witnesses to answer several hypothetical questions involving the manner in which the consent to the operation was obtained. These inquiries were concerned with whether a physician in Dr. Holz's community satisfied the standard of care required of him when he merely informed his patient that a hysterectomy was major surgery and complications could arise. The experts were asked to assume certain facts and then express an opinion as to whether the standard of care had been adhered to. At trial, appellant unsuccessfully objected to the asking of these questions and claimed their use was improper as they were based on contested evidence.

However, this argument is not well founded and misconstrues the scope and purpose for which hypothetical questions may be utilized. In *Gordon v. Opalecky,* 152 Md. 536, 549, 137 A. 299 (1927) this Court stated that such inquiries are normally and properly employed in the following manner:

> "One is where the evidence is uncontradicted and the witness has heard or read it. In such a case he is asked to express an opinion predicated upon the assumption that the evidence thus known to him is true. The other way is to state to the witness such facts as are essential to the formation of a fair and intelligent opinion, ask him to assume the truth of the facts so stated, and to express an opinion upon them."

It is quite clear that an expert's conclusion is inadmissible

if it requires that witness to resolve internally conflicting material facts involved in the question, prior to rendering his opinion. The rationale for excluding conclusions based on a question having internally contested facts is that the expert is required to make a judgment which invades the jury's province, *Calder v. Levi,* 168 Md. 260, 266, 177 A. 392 (1935). Under such circumstances, the proper way to submit a hypothetical question is to ask the witness to presume the truth of certain facts as if they were not the subject of dispute. These may still be contested in actuality but the inquiry is proper as long as there is evidentiary support for the facts which the expert is told to assume the veracity of and evaluate in rendering his opinion. Of course, any assumption made must be grounded on a fair summation of the material facts in evidence and those material facts must be sufficient in scope for the witness to formulate a rational opinion. In such a situation the jury is aware of the premise upon which the opinion is based and can determine whether that assumption was valid. If it is not, the opinion of the expert is disregarded. *Nolan v. Dillon,* 261 Md. 516, 276 A. 2d 36 (1971) ; *State, Use of Solomon v. Fishel,* 228 Md. 189, 179 A. 2d 349 (1962) ; *Thompson v. Phosphate Works,* 178 Md. 305, 13 A. 2d 328 (1940) ; *Quimby v. Greenhawk,* 166 Md. 335, 171 A. 59 (1934). Here, there was conflict in the testimony but there was evidentiary support for the material facts which appellee's experts were asked to assume. In fact, when Mrs. Kruszewski's attorney posed a hypothetical question to these same witnesses in which they were asked to presume a different factual pattern favorable to appellant, they altered their responses accordingly.

### (v)

Judge Barrick submitted this case to the jury on five special issues and appellee raises questions concerning the following two:

"4. Did Dr. Richard G. Holz deviate from the standard of care by not sufficiently inform-

ing Mrs. Helen Thoresen-Kruszewski of the alternatives and risks involved in obtaining her consent to operate?

5. Did Dr. Richard G. Holz obtain Mrs. Helen Thoresen-Kruszewski's consent through misrepresentation?"

Appellant requested that the trial court omit the fifth question since the information it sought was uncontested. Mrs. Kruszewski also suggested that the fourth issue be divided into two separate inquiries. She claims it was error for the trial judge to deny these proposals. In responding to her arguments we must evaluate the appropriate law.

A trial judge's authority to submit a case to a jury for a special verdict is conferred by Maryland Rule 560. Recently in *Zinn v. Imperial Council,* 253 Md. 183, 192-93, 252 A. 2d 76 (1969), we discussed the proper manner for presenting issues to the trier of fact. There we stated:

> "In framing issues to be submitted for determination by a court of law, sitting either with or without a jury, the objective is to draft issues that are simple, concise and couched in plain and easily understood terms. It is also desirable that tedious duplicity be avoided by eliminating overlapping issues . . . .
>
> 'In our opinion, the correct rule to be observed, and the one which will best subserve the purposes of justice, is to *grant no more than one issue presenting the same substantial question,* and secondly, not to multiply the issues unnecessarily, and to grant such only as distinctly present the real questions in dispute.' (Emphasis supplied.)" *Sumwalt v. Sumwalt,* 52 Md. 338, 348 (1879).

Appellant says it was conceded on her part that Dr. Holz did not deliberately lie nor intentionally misrepre-

sent the facts in order to obtain her consent to the operation. Therefore, in attacking the propriety of the fifth issue she reasons that it prejudiced her cause for the jury to think she was making that contention. However, the submission of this to the jury, although unnecessary with Mrs. Kruszewski's concession, in our opinion could not have been detrimental to her case since that question had to be answered in the negative. We think her apprehension on this point is totally unwarranted. As to her other suggestion, appellant requested either that her case be submitted to the jury on the first four issues only or that number four be separated into its component parts so that it would comprise two specific factual questions. These would read:

> "Did Dr. Holz negligently misinform Mrs. Thoresen [Kruszewski] as to the possible hazards of hormones before and after the operation, thereby securing her consent?
>
> Did Dr. Holz negligently fail to inform Mrs. Thoresen [Kruszewski] that there were possible complications attending the proposed hysterectomy?"

However, we do not perceive any necessity for such action because the issues are clearly subsumed in number four. That inquiry, as submitted to the jury, concisely and simply presented the general question of whether appellee was negligent in obtaining Mrs. Kruszewski's consent.

We find no reversible error was committed by the trial court and affirm its judgment.

*Judgment affirmed.*
*Costs to be paid by appellant.*