CHARLES V. DUNHAM ET AL. *v.* THADDEUS H. ELDER

[No. 625, September Term, 1972.]

*Decided July 9, 1973.*

---

The cause was argued before MENCHINE, SCANLAN and DAVIDSON, JJ.

*Robert A. Diemer*, with whom were *Bill L. Yoho, Robert S. Hoyert, Roy W. Hooten, Joseph F. McBride* and *Hoyert, Diemer, Yoho, Hooten & McBride, Calvin E. Cohen* and *Wright & Cohen* on the brief, for appellants.

*William A. Ehrmantraut*, with whom were *Donahue & Ehrmantraut* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellants, Charles V. Dunham, and his wife, Rose Marie Dunham, filed a malpractice action against the appellee, Thaddeus H. Elder, M.D., in the Circuit Court for Prince George's County. Their suit alleged that the appellee, a medical doctor engaged in general practice in Prince George's County in 1967, was negligent both in his diagnosis and in his treatment of Mr. Dunham's medical condition during the period from August 1, 1967 through February 1969.

Specifically, appellants claim that the appellee misdiagnosed Mr. Dunham's condition as gout and placed him on a course of treatment under which he took .5 gm. of a drug known as Benemid twice daily with one teaspoon of bicarbonate of soda in a glass of water with Tylenol, and that his use of Benemid over a period of time produced a

painful and debilitating condition in Mr. Dunham known as nephrotic syndrome, *i.e.*, an inflammation of the kidneys, which was caused by an allergic reaction to the drug. Appellants further claimed Mr. Dunham was suffering from arthritis, and not from gout, and that when he was taken off the Benemid and soda prescription his medical condition substantially improved. Appellants also alleged that Mr. Dunham suffered a permanent disability as a result of damages to his kidneys, as well as an aggravated arthritic condition that would have been reduced or controlled but for the negligent treatment by the appellee.

At the conclusion of the appellants' case, the trial judge took the case from the jury by granting the appellee's motion for a directed verdict. The court below assigned three grounds in granting the motion. It found: (1) that there was insufficient testimony to present to the jury on the question of the standard of care required to be observed by a doctor in general practice in Prince George's County in 1967; (2) that there had been no showing of a breach of the requisite standard of care; and (3) that the appellants had failed to demonstrate sufficiently a causal relationship between the breach of standard of care and the injuries or damages complained of by Mr. Dunham.

We hold, for the reasons stated in this opinion, that the court below was correct in finding that the appellants did not establish the standard of care required of a general medical practitioner in Prince George's County in 1967, and also failed to demonstrate any breach of that standard. Accordingly, we do not reach the question of whether the appellants *prima facie* proved a causal relationship between the alleged deviation from the standard of care on the part of the appellee and the injury suffered by Mr. Dunham.[1]

---

1. Appellants also contend that the trial court erred in refusing to adopt their counsel's suggestion that a new trial be granted because of remarks made by the trial court out of the presence of the jury concerning statements made in court by one of the appellants' witnesses, Dr. Herzmark. This witness accused (in jest he said) appellee's counsel and the trial judge of what, if true, would be serious professional improprieties, descending perhaps to the level of crimes. Appellee's counsel brought these remarks to the attention of the court. Dr. Herzmark was then questioned by the judge about them, out of the presence of the jury. Examination of

In deciding whether the appellee's motion for a directed verdict was properly granted in the court below, we will consider the evidence, together with all reasonable and legitimate inferences which may be drawn therefrom, in a light most favorable to the appellants. *Carolina Coach Co. v. Bradley,* 17 Md. App. 51, 299 A. 2d 474 (1973). See also *Stoskin v. Prensky,* 256 Md. 707, 709, 262 A. 2d 48 (1970).

In proving a malpractice case in Maryland, a plaintiff has the burden of proving: (1) the standard of medical skill and care ordinarily exercised in the particular locality; (2) a failure to observe that standard on the part of the physician-defendant; and (3) a showing that the defendant's failure to observe the proper standard was a direct cause of the injuries about which his patient complains in the malpractice action. *Johns Hopkins Hospital v. Genda,* 255 Md. 616, 620, 623, 258 A. 2d 595 (1969); *Suburban Hospital Association v. Mewhinney,* 230 Md. 480, 484, 485, 187 A. 2d 671 (1963). If proof of each of these elements is not shown, "the case is not a proper one for submission to the jury." *Lane v. Calvert,* 215 Md. 457, 462, 138 A. 2d 902 (1958).

In determining what is the proper standard of medical care which must be observed by a physician, either specialist or general practitioner, several different rules have been applied by the courts. In a number of jurisdictions the standard of medical skill and care required is not merely that of other physicians and surgeons practicing in the defendant's own community, but rather the standard adhered to by physicians and surgeons of ordinary skill and care in either the defendant-doctor's community *or* in a similar community. *Malpractice — Care — Nonlocal*

---

the transcript establishes that the trial judge, despite the witness's inexcusable misconduct, was extremely restrained in questioning him. Moreover, at the conclusion of the examination the trial judge made it clear that he would take no action against the doctor or do anything to impair the appellants' case. We find, therefore, no abuse of judicial discretion in the trial court's discreet handling of this unfortunate incident. Lucas v. Williams, 218 Md. 322, 329, 146 A. 2d 764 (1958); and see Britton v. State, 10 Md. App. 70, 74, 267 A. 2d 747 (1970). We note also that appellants' counsel never actually moved for a mistrial based upon the judge's questioning of Dr. Herzmark. The question, therefore, was not preserved for purposes of this appeal. Rule 1085.

**364**

*Testimony*, 37 A.L.R.3d 420, 424 (1971). In jurisdictions following this rule the mere fact that a physician called as an expert by the plaintiff has never practiced in the immediate neighborhood where the alleged malpractice occurred will not necessarily disqualify him from testifying concerning the standard of practice in that locality, provided the witness is familiar with the standard of care ordinarily observed by other physicians in either the defendant's community *or* a similar locality. *Lewis v. Johnson*, 12 Cal. 2d 558, 86 P. 2d 99, 101 (1939); *Murphy v. Dyer*, 409 F. 2d 747, 748 (10th Cir. 1969). An even more liberal rule is followed in some jurisdictions where the applicable standard of care is not tied to any particular geographic locality. In these jurisdictions, the standard of care in the defendant's locality, or the standard in the general neighborhood of the defendant's locality, or in a similar locality, is simply a factor which may be considered when determining the defendant's guilt or innocence of the malpractice charge. 37 A.L.R.3d at 424. *See, e.g., Carbone v. Warburton*, 11 N. J. 418, 94 A. 2d 680, 684 (1953), and *McElroy v. Frost*, 268 P. 2d 273, 280 (Okla. 1954). The third, and most restrictive rule, observed in a few jurisdictions is that an expert medical witness must be familiar with the standard of care possessed and exercised by physicians in the defendant's own community or locality, the so-called "strict locality rule." 37 A.L.R.3d at 424; *Lockart v. Maclean*, 77 Nev. 210, 361 P. 2d 670, 673 (1961). We read the Maryland precedents to apply the more strict rule that the plaintiff must show that the defendant-physician failed to exercise "the amount of care, skill and diligence as a physician and surgeon which is exercised generally *in the community . . . in which he was practising . . . .*" (Emphasis added.) *State v. Fishel*, 228 Md. 189, 195, 179 A. 2d 349 (1962); *Kruszewski v. Holz*, 265 Md. 434, 438, 290 A. 2d 534 (1972); *Nolan v. Dillon*, 261 Md. 516, 534, 276 A. 2d 36 (1971).

Maryland's adherence to the strict locality rule is, however, a distinct minority view. In recent years, "as the dissemination of medical information has become quicker and methods of treatment have become more uniform, the

trend in an ever-growing number of jurisdictions has been to allow medical witnesses from localities other than that in which the defendant practices to testify, in a malpractice case, to the standard of care that the defendant should have observed," without being tied solely to the standard prevailing either in the defendant's own community or in similar localities. 37 A.L.R.3d at 424. Thus, if the issue were one of first impression in Maryland and its resolution was necessary in order to decide this appeal, we might be persuaded to hold that the requisite standard of medical care and skill to which a physician should be held is the standard which applies either in the general neighborhood of Prince George's County or in similar localities, including, but not limited to, the metropolitan Washington area. On the facts of the instant case, however, we need not speculate whether the strict locality rule should be relaxed in view of the present status of medical knowledge. Our review of the record in this case reveals that there was no testimony introduced by the appellants to establish what the requisite standard of medical care and skill for a general practitioner was, either in the Prince George's County area, the State of Maryland as a whole, or the metropolitan Washington area in 1967.

In attempting to demonstrate the requisite standard of medical care and skill, the plaintiff called two medical witnesses. The first of these, Dr. Fletcher Derrick, was a urologist. Dr. Derrick testified that he had never practiced, treated patients, enjoyed privileges in any hospital or maintained an office in Maryland. He came to Washington, D. C. in December 1970, where he now practices urology and is associated with George Washington University Hospital. Upon objection by counsel for appellants, Dr. Derrick was not permitted to give an opinion as to the standard of care required of a general practitioner in the State of Maryland in 1967. Thereafter, he was accepted by the court as an expert qualified in the field of urology. The court correctly ruled, however, that although Dr. Derrick could testify as a urologist, "he is not qualified for the purposes required in Maryland law to testify as to what the standard of care was

in Maryland [including Prince George's County] in 1967 of a G.P."

Dr. Maurice H. Herzmark also testified on behalf of the appellants. Dr. Herzmark had engaged in the general practice of medicine and surgery in Washington, D. C. from 1925 to 1928. In that year, he gave up his practice to become a resident surgeon at a hospital in New York. His subsequent career as a doctor has been in the field of orthopedic surgery. Dr. Herzmark was never licensed to practice in Maryland and has not practiced here. From the record, it appears that Dr. Herzmark was never qualified as an expert witness at the trial and his testimony was solely that of an examining physician.

Dr. Herzmark did testify that the standard of care for an orthopedic surgeon in 1928 was the same as that required of a general practitioner in that year and that he had not heard that the 1928 standard had been changed today. Dr. Herzmark never testified, however, as to the standard of care required of a general practitioner, either in Maryland or Prince George's County, in 1967.

The appellants offered no other testimony concerning the standard of medical care required in Maryland or Prince George's County in 1967, other than that of Doctors Derrick and Herzmark. Clearly, their testimony was insufficient to establish what was the standard of medical care and skill required of a general practitioner in Prince George's County, or for that matter, in Maryland, in the year 1967.

Appellants contend, however, that Maryland has abandoned the strict locality or community rule referred to *supra.* We do not discern that to be so. Apart from the cases previously cited in this opinion, we refer to the Court of Appeals' decision in *Tempchin v. Sampson,* 262 Md. 156, 159, 277 A. 2d 67 (1971), where the Court once again held that the degree of medical care and skill that must be observed by physicians is the same as that practiced by other physicians in the same field of medicine in the community where the defendant-doctor practiced. Moreover, even if we were to agree that the strict locality standard had been modified so as to permit an expert medical witness to testify what the

requisite standard is in Prince George's County by showing what standard is followed in similar localities, the appellants' case would not be helped. Neither Dr. Derrick nor Dr. Herzmark offered testimony concerning such broader standard.

Since the appellants did not establish the requisite standard of medical care and skill, either in Prince George's County, or in Maryland generally, it follows that there has been no demonstration of a breach of that standard. It is true that Drs. Derrick and Herzmark gave testimony which was critical of Dr. Elder's original diagnosis of Mr. Dunham's gout condition and also challenged the treatment he prescribed for the patient. Their testimony along these lines might have been enough to submit to the jury on the question of breach, *if* the standard of care required had been established during the course of the appellants' case. Appellants' failure to show that standard, however, made it impossible for them to shoulder successfully their second burden, *i.e.*, that Dr. Elder had failed to observe such standard in his treatment of Mr. Dunham.

Having concluded that the appellants did not establish the applicable standard and, as a consequence, could not show a breach or departure from that standard, we need not consider whether or not appellants' evidence boosted them over the third hurdle in their path, *viz.*, to show that the appellee's failure to observe a proper standard of care was a direct cause of the injuries about which Mr. Dunham complains.

*Judgment affirmed; appellants
to pay the costs.*