RICHARD H. DOBSON ET AL. *v.* JAMES L. MULCARE ET AL.

[No. 1011, September Term, 1974.]

*Decided June 6, 1975.*

700

The cause was argued before MORTON, GILBERT and LOWE, JJ.

*William A. Ehrmantraut* and *E. Gwinn Miller* for appellants.

*Burt M. Kahn,* with whom were *Walter E. Laake, Jr.,* and *Kaplan, Smith, Joseph, Greenwald & Laake* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

On May 29, 1973, James L. Mulcare, personal representative and surviving husband of Betty J. Mulcare, brought suit on behalf of his deceased wife's estate, himself individually, and himself as next friend of his minor daughter, all collectively styled appellee, against Dr. Richard H. Dobson and the Brandywine-Waldorf Medical/Dental Clinic, Inc., appellants. The suit alleged that Dr. Dobson, President and Treasurer of the Clinic, had negligently administered a tetanus toxoid injection to Mrs. Mulcare, in that the injection was made without first ascertaining Mrs. Mulcare's medical history, and without determining whether she was likely to suffer an allergic reaction to the administration of the drug. The suit averred that as a result of Dr. Dobson's negligence Mrs. Mulcare sustained bodily damage which ultimately resulted in her death.

At trial in the Circuit Court for Prince George's County the appellee offered the testimony of Dr. Harold L. Hirsh, who is also a graduate of the American University, Washington College of Law.[1] Dr. Hirsh was asked the question:

> "[A]re you familiar with the standard of care in existence in Prince George's County in May 1970 with respect to the administering of tetanus toxoid?"

An objection was immediately interposed by the appellants, and after *voir dire* and a colloquy with the court, the objection was sustained on the basis that while the doctor was "a qualified internal medicine specialist," he was "not a general practitioner." The trial judge stated that he did not "feel" that the witness was "sufficiently experienced as a general practitioner in the community of Brandywine to

---

1. The record is silent as to whether Dr. Hirsh is a member of the Maryland Bar, but he has been licensed to practice medicine within the State since 1969. Since 1950 Dr. Hirsh has been on the faculty of the Howard University School of Medicine.

express an opinion in Prince George's County for an office practice and for that reason" sustained the objection.

To support his position the trial judge cited *Dunham v. Elder*, 18 Md. App. 360, 306 A. 2d 568 (1973) wherein we, after discussing the several different rules applicable to the standard of medical skill and care that have been applied by courts in determining whether there has been a breach by physicians and surgeons of the standard required of them, noted that Maryland follows the,

> " . . . most restrictive rule, observed in a few jurisdictions . . . that an expert medical witness must be familiar with the standard of care possessed and exercised by physicians in the defendant's own community or locality, the so-called 'strict locality rule'." 18 Md. App. at 364.

We concluded in *Dunham* that in this State the plaintiff must demonstrate that "the defendant-physician failed to exercise 'the amount of care, skill and diligence as a physician and surgeon which is exercised generally . . . *in the community . . . in which he was practicing. . . .* " 18 Md. App. at 364. *Kruszewski v. Holz*, 265 Md. 434, 438, 290 A. 2d 534 (1972); *Nolan v. Dillon*, 261 Md. 516, 534, 276 A. 2d 36 (1971); *State v. Fishel*, 228 Md. 189, 195, 179 A. 2d 349 (1962).

The appellee noted a formal exception to the trial judge's ruling. The matter was reserved for determination by an *en banc* panel, and the trial continued. The reservation occurred on a Friday. The following Monday, the next court session, the trial judge stated:

> " . . . I had been doing a lot of reading and consider myself much more enlightened now than I was the other day when I refused to let Dr. Hirsh testify as to the accepted practice in the community.
>
> I was unfortunately, I believe, looking at what I personally thought of his ability as a practitioner of medicine, rather than his ability to understand and know the standard of care needed in the

community, and I prohibited him from testifying as to the fact. I am convinced his qualifications are such he could have testified about it, and if you want to use him on rebuttal I will let him answer that one question. I just feel obligated to tell each of you two."

Appellee's counsel noted that Dr. Hirsh had departed for the Orient and would be gone for "four weeks". Whereupon the trial judge said:

"Let me say this to you, and I am not saying I am wrong in my previous ruling, and I place emphasis on this, that I wanted to get a trial with the most favorable consideration to the plaintiff. I am not convinced the Court of Special Appeals and/or the Court of Appeals wouldn't sustain my conclusion, based on the fact, I am of the opinion, for some substantial period of time he has become an educator rather than a practitioner of medicine, and I realize the basis for his expertise, apparently, was that he visited his classmate ... down at LaPlata a few times, and his practicing medicine in the City [Washington, D.C.], ... could very readily be entirely different from Brandywine and the Waldorf area, Prince George's and Charles County."

The case went to the jury without benefit of Dr. Hirsh's answer to the question directed toward Hirsh's familiarity with the standard of care existent in May 1970, in Prince George's County with respect to the tetanus toxoid injections. The jury found for the appellants.

The appellee filed a motion for a new trial. By the time the motion was heard our decision in *Raitt v. Johns Hopkins*, 22 Md. App. 196, 322 A. 2d 548 (1974), *rev'd on other grounds*, 274 Md. 489, 336 A. 2d 90, had been handed down. The trial judge denied the motion for a new trial, and the matter then proceeded before the *en banc* panel.

The panel consisted of Ralph W. Powers, Chief Judge of

the Seventh Judicial Circuit, and Judges Samuel W.H. Meloy and Joseph A. Mattingly. The majority of the panel, Judges Powers and Meloy [2] concluded that the trial judge had erred, and .they accordingly ordered a new trial. Appeal was entered to this Court from that ruling.

The appellee moved to dismiss the appeal on the ground that no appeal lies from an order granting a new trial. They reason that inasmuch as the *en banc* panel granted a new trial, there is no appealable judgment to be reviewed by this Court. It is, of course, axiomatic that an appeal does not lie from an order granting a new trial,[3] but the Court of Appeals has carved out an exception to the general rule, insofar as its applicability to *en banc* proceedings is concerned, and allowed such appeals.

Recently, in *Buck v. Folkers*, 269 Md. 185, 304 A. 2d 826 (1973), Chief Judge Murphy, after noting that the *en banc* panel had, on April 26, 1972, remanded a case for a new trial, which new trial was held on October 2, 1972, observed that:

> "While Buck, as the adverse party, was entitled
> under [the Constitution of Maryland] Article IV, §
> 22 to appeal from the en banc determination, . . .
> such an appeal, to be timely, must have been filed
> within thirty days after April 26, 1972. . . . Since it
> was not, we cannot take cognizance of the questions
> presented. . . . " 269 Md. at 187-88.

As we read *Buck*, an adverse party in the *en banc* proceeding may appeal to this Court [4] from an order of the panel notwithstanding the fact that the order grants a new trial, and provided that the appeal is taken within the thirty days prescribed by Md. Rule 1012.

---

2. Judge Mattingly filed a dissent.

3. *See, e.g.*, A.S. Abell Co. v. Skeen, 265 Md. 53, 288 A. 2d 596 (1972); Carlile v. Two Guys, 264 Md. 475, 287 A. 2d 31 (1972); Grabner v. Battle, 256 Md. 514, 260 A. 2d 634 (1970); Turner v. Wash. Sanitary Comm., 221 Md. 494, 158 A. 2d 125 (1960); Hartlove v. Bottling Co., 160 Md. 507, 153 A. 850 (1931); Chiswell v. Nichols, 139 Md. 442, 115 A. 790 (1921).

4. The holding of Buck v. Folkers, *supra*, has been altered slightly by the shift of original appellate jurisdiction from the Court of Appeals to this Court. *See* Courts and Judicial Proceedings Article § 12-308, so that the appeal is no longer taken directly to the Court of Appeals.

Article IV, § 22 of the Constitution provides in pertinent part:

> "Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a court in *banc* for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made; and the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in *banc,* and the decision of the said Court in *banc* shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved; *but such decision in banc shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may be allowed by Law. . . .* " [5] (Emphasis supplied).

The italicized portion of § 22 makes it crystalline that the adverse party in an *en banc* proceeding may appeal to this Court "in those cases, civil or criminal," in which the appeal is "allowed by law." As we have seen (n. 3, *supra*), appeals from the granting of a motion for a new trial are not ordinarily "allowed by law", but *Buck* clearly stands for the proposition that the granting of a new trial by an *en banc* panel is immediately appealable. Therefore, the appellants are properly before us, and the appellee's motion to dismiss the appeal is denied. We now turn to a discussion of the case on its merits.

---

5. The adverse party would appeal, of course, to this Court. *See* n. 4 *supra.*

The law in this State is that whether a witness is qualified to testify as an expert is largely within the sound discretion of the trial judge, "and unless such ruling is clearly erroneous or a clear abuse of discretion it will not be reversed on appeal." *Spence v. Wiles,* 255 Md. 98, 102-03, 257 A. 2d 164 (1969). *See also Nizer v. Phelps,* 252 Md. 185, 249 A. 2d 112 (1969); *Smith v. State Roads Comm'n,* 240 Md. 525, 214 A. 2d 792 (1965); *Christ v. Wempe,* 219 Md. 627, 150 A. 2d 918 (1959); *Beckner v. Chalkley,* 19 Md. App. 239, 310 A. 2d 569 (1973); *Owens v. Creaser,* 14 Md. App. 593, 288 A. 2d 394 (1972), *rev'd on other grounds,* 267 Md. 238, 297 A. 2d 235 (1972); *Murphy v. Bd. of County Comm'nrs,* 13 Md. App. 497, 284 A. 2d 261 (1971). In the case presently before us, the majority of the *en banc* panel did find that the trial judge was incorrect in his refusal to allow the testimony of Dr. Hirsh.

A review of the record reveals that the appellants objected to the Hirsh testimony on the ground that it was proscribed by our holding in *Dunham v. Elder, supra,* in that Dr. Hirsh was unfamiliar with the degree of care required of physicians engaged in the general practice of medicine in Prince George's County. The trial judge seemingly, as the majority of the *en banc* panel observed, "construed *Dunham* as requiring the expert to have gained his knowledge by practicing or residing in the community involved." Furthermore, the trial judge noted that although Dr. Hirsh possessed a Maryland medical license, dating from 1969, the doctor had never had a private practice within this State except for a few occasions when he took over the practice, temporarily, of a fellow physician who was ill. Dr. Hirsh's internal medicine practice was essentially limited to the inhabitants of the District of Columbia with a few patients, however, traveling to Dr. Hirsh from nearby Maryland points. Dr. Hirsh possessed only temporary hospital privileges in this State, although he did frequent Maryland hospitals as a consultant on both infectious diseases and problems with antibiotics.

Chief Judge Orth in *Raitt v. Johns Hopkins Hospital, supra,* noted that *Dunham* had been misread and thus

misconstrued. The Chief Judge pointed out, 22 Md. App. at 200, that *Dunham* does not hold that "the expert must have gained his knowledge by practicing or residing in the community involved." It was not, in order to establish Dr. Hirsh's expertise with respect to the standard of care required in the administration of an anti-tetanus "shot" in the Brandywine area of Prince George's County, necessary to show as a prerequisite that the doctor practiced or resided in that geographical region.

> "*Dunham* is not to be read as other than following the rule firmly established by the Court of Appeals. When we pointed out in *Dunham* that the experts offered had never been licensed to practice in Maryland, and had never practiced in this State, treated patients, enjoyed privileges in any hospital in Maryland or maintained an office here, we were not impressing additional requirements on the qualifications required by an expert to testify on the matter of local care or skill. We were merely noting the background of the physicians involved; we were not holding that they could not be familiar with the standard of care or skill in the community unless they were licensed to practice in Maryland, and actually practiced, treated patients, maintained an office, and enjoyed hospital privileges in the locality. If the evidence is sufficient to show fairly to the reasonable satisfaction of the trial judge that the expert witness proffered is familiar with the local standard concerned, that witness, otherwise qualified, may testify as an expert with respect to the standard." 22 Md. App. at 203.

Appellants here argued that "[c]ontrary to the *en banc* majority's opinion, . . . [the trial judge] did not base his holding solely upon Dr. Hirsh's lack of practical experience in Maryland. As is clear from his statements in the appellant's [sic] motion for a new trial, the trial judge only utilized Dr. Hirsh's lack of experience in Maryland as an

indication of his lack of familiarity with the local standards existent in Prince George's County in 1970."

The trial judge said at the hearing on the motion for a new trial:

" . . . [Dr. Hirsh] decided to give up the practice of medicine full-time and go to law school and having done that, there is a serious question as to whether he continued to actively practice because since having graduated from law school and passing the Bar, he is now an educator teaching school and some medical-legal courses at Catholic University, American University and I believe Georgetown, maybe George Washington. And I believe teaching internal medicine possibly at Howard University Medical School.

Now, the question that the Court had to resolve in this case is not whether or not Dr. Hirsh ever practiced medicine in the locality where he was called upon to testify, the issue is, whether or not he possessed the qualifications to testify as to the practice of a general practitioner in the Brandywine section of Prince George's County. The Court found originally at the trial after review of the *Dunham v. Elder* case and other Court of Appeals decision cases, the Court in exercise of its sound discretion, determined that Dr. Hirsh's qualifications were at least suspect from the factual testimony and the Court's observation of his conduct during the trial. He was in the courtroom with other experts on behalf of the Defendant and continuously assisted counsel, when I say continuously, quite often would from the audience, make suggestions to counsel and his law clerk for the Plaintiff regarding the trial. It was very obvious that Mr. Hirsh was minutely familiar with the principals involved and actually injected his relationship with Dr. Perrin Jarboe who practices and has for years, practiced in LaPlata, Charles County which is not too distant

from Brandywine, Maryland, southern Prince George's County and indicated from time to time he had discussed Dr. Jarboe's patients with him during those visits.

The Court feels that that really is the factor that convinced me, after determining his present professional status as a lawyer-doctor or doctor-lawyer as to his objectiveness as an expert in the standards for a general practitioner in Brandywine, Maryland. The Court concludes that the facts that I am confronted with in this case are real tough as to letting the doctor testify or preventing him from testifying. The responsibility is mine in the exercise of sound discretion and the Court, in passing must observe that this having happened on Friday, determined on Saturday to contact the attorneys and in some indication that it might reverse itself on this ruling, suggested to Mr. Laake and Mr. Ehrmantraut that if Dr. Hirsh were to return, it's conceivable that the Court would permit him to testify. Dr. Hirsh, according to Mr. Laake, left for the Orient over the weekend, such was not possible, not to indicate that the Court was convinced that . . . [it] had in fact errored [sic] in preventing the testimony and I refer to the Court's observations. . . . "

We think the trial court to have been misled by the fact that Dr. Hirsh is also a member of the Bar. In our view, that Dr. Hirsh may have made suggestions to appellee's counsel or counsel's law clerk is not sufficient reason to conclude that the doctor was not qualified to be an expert witness. While the doctor's aiding of trial counsel, in the presence of the jury, may have affected in the eyes of the jury the doctor's credibility as a witness, it certainly should not have prevented his testifying. Indeed, many expert witnesses confer with trial counsel prior to trial in order that counsel may become aware of the niceties of the expert's field, and thus gain some insight so as better to prepare a case for the

client with respect to both direct and cross-examination. If expert witnesses who consulted, advised and conferred with counsel prior to trial were precluded from testifying on the ground of loss of objectivity, there is not much likelihood of an expert's ever testifying unless counsel were willing to call a witness without having any concrete idea as to what the witness would say. Such a situation would be abhorrent to trial attorneys, and justifiably so. The difference between pre-trial suggestion and in-trial suggestion is a matter of degree, not kind. That Dr. Hirsh enjoys the right to practice more than one profession in no way, *per se*, lessens his expertise in either discipline.

We conclude, as did the majority of the *en banc* panel, that the trial judge's rulings with respect to Dr. Hirsh's lack of expertise were error beyond the breadth of his discretion. The doctor's testimony was properly admissible and its improper exclusion constitutes reversible error.

Appellants also argue that even if the excluded testimony were admissible, any error in excluding it is harmless because it was purely cumulative. There are two answers to that contention. First, the trial court itself noted that, testimony from another doctor who was a witness for the appellees did not "justify that [evidence] being in from Dr. Hirsh." Second, the evidence that was received from the local practitioner was offered for the purpose of demonstrating the local practice in regard to the injection of the anti-tetanus serum. Dr. Hirsh's testimony was to show the appellant deviated from the acceptable local standard. *Ergo*, the testimony was not cumulative in that it was educed to accomplish entirely different goals.

*Order of en banc panel granting a*
*new trial affirmed.*
*Costs to be paid by appellants.*