DUNMAN *v.* RANEY.

Opinion delivered May 3, 1915.

1. EVIDENCE—PHYSICAL CONDITION OF PLAINTIFF—EXPERT OPINION.—In an action for damages against a physician for negligence in improperly setting and treating plaintiff's leg which had been broken, it is competent for the plaintiff to testify that on a certain date the leg became dislocated, the same being a matter of ordinary observation and not a matter exclusively of expert or scientific knowledge.

2. NEGLIGENCE—PHYSICIANS—NEGLIGENT TREATMENT.—In an action for damages against a physician for negligence in the setting and treatment of plaintiff's broken leg; *held,* under the pleading and proof an instruction was correct which charged the jury that if the physician failed to use reasonable care and diligence either in the diagnosis, treatment or the giving of instructions to the plaintiff or his attendants, and if such failure resulted in the

injury to plaintiff's leg, of which he complains, without the fault of the plaintiff, then the defendant is liable for damages.

3. PHYSICIANS—TREATMENT OF PATIENTS—DUTY OF CARE.—A physician or surgeon in the treatment of patients is not required to exercise the highest skill possible; he is only bound to possess and to exercise that degree of skill and learning ordinarily possessed and exercised, by members of his profession in good standing, practicing in the same line, and in the same general neighborhood or in similar localities; he must use reasonable care in the exercise of his skill and learning, and must act according to his best judgment in the treatment of his patients.

4. DAMAGES—PHYSICIANS—NEGLIGENT TREATMENT OF PATIENT.—The basis for awarding damages in an action by a patient against a physician for improper treatment, is such damage the jury finds from a consideration of all the evidence, would fairly and reasonably compensate plaintiff for his injuries, and the elements of damage to be considered by the jury, are plaintiff's loss of time, loss of earning power, bodily pain and suffering which he has been compelled to endure, mental anguish resulting from the negligence, and any future suffering or inconvenience which he must suffer by reason of such negligence.

5. NEGLIGENCE—PHYSICIANS—TREATMENT OF PATIENT—CONTRIBUTORY NEGLIGENCE.—In an action for damages caused by negligent treatment by the defendant physician, the burden is upon the defendant to prove plaintiff's contributory negligence, and the plaintiff will not be held to have been guilty of contributory negligence in disobeying instructions in the absence of a showing that he received any instructions from the physician, which it was the physician's duty to give him; and the plaintiff can not recover when his condition resulted from his failure to properly take care of himself.

Appeal from Polk Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellee sued the appellant, alleging in substance that appellee employed appellant as a physician and surgeon to treat the appellee, whose leg was broken; that appellant, after setting the leg, so negligently and unskillfully treated and cared for same that the same could not heal, but that, on the contrary, the same became inflamed and diseased and the bones became dead so that the flesh did not adhere thereto, and the leg became so twisted, shortened, deformed and diseased as to necessitate its

amputation; that appellee, by reason of appellant's negligence, had been damaged in the sum of $5,000 for pain and suffering, loss of earning power, and loss of time and expense incident to the operation, for which he asked judgment.

The appellant denied that he was employed by the appellee, but alleged that he was employed by W. J. Lauck, and that under said employment he undertook to assist in setting appellee's leg and in attending and caring for him. He denied the allegations of negligence, and set up that if appellee's leg became diseased and refused to heal, that it was due to appellee himself and his condition.

Appellee testified that on the 18th of March, 1913, he was painting, the scaffold broke and a piece of timber hit him on the left leg and broke it. Doctor Parks set appellee's leg at the time, and was assisted by the appellant. Appellant continued to treat appellee's leg for about seventy-eight days after it was set. On the second visit of Doctor Parks, the appellant dressed appellee's leg, putting new bandages on it. There was nothing said at the time about appellee's leg being out of place. Appellant continued to treat appellee's leg until about the 5th of June. After being set on the 18th of March, appellee's leg got dislocated about the 1st of April. The end of his foot was a little to one side. Appellee called the appellant's attention to this condition, but appellant did not reset it. Appellant was the only one who treated the leg after that time. The people who waited on appellee followed the directions of the appellant. When appellant left appellee on the 5th of June, he told appellee that appellee's leg was a little crooked, but would be all right, and that appellee would not need any other physician. Appellee's leg was in a bad condition when he called in Doctor Parks. Appellee got on crutches while appellant was treating him. Appellee did not remove the bandage or splint from his leg. There was no effort made by the appellant to straighten appellee's leg after the same became dislocated.

On cross-examination, appellee stated that he did not know what caused his leg to get crooked. He was lying in bed on his back when it became crooked At the time appellee's leg was first set, appellant said something about amputating it. Appellee objected to it. While appellant was looking at appellee's leg, before appellant said anything to appellee about it, appellee stated that he said to appellant as follows: "Doctor, I want you to save that leg, if you can," and appellant says, "Save it?" "I told him, 'Yes,' and that is about all he said about it to me."

At the time the injury happened, appellee had on his working clothes. One of the bones protruded through his trousers. Appellee stated that after he got on his crutches, he had a fall and hurt his leg; that the leg had united there where the bone would touch the lower part of the break.

Appellee called Doctor Parks, who made about four or five visits after appellant left. Appellee's leg was amputated in March, 1913. Doctor Parks did not reset appellee's leg after he began treating it. Appellee got suspenders and bandaged his leg and made suspenders to hold the splints. He did this under appellant's instructions.

It was shown that the break was what is known as a "compound comminuted" fracture.

Surgeons testified that where the leg had been set after such fractures, if it became dislocated it would be difficult to ascertain that fact unless the bandages were removed; that if it were discovered that the bone, after being set, had become dislocated, it would be the physicians' duty to reset it; that after fifteen days, if the bones had not united, they would be in a condition that they could not unite. In cases of infection, there would be a failure of the flesh wound to heal. If there were no infection and the leg was properly set, the large majority of cases would heal. If the infection could not be cured, the bone would not be liable to heal, and an amputation would be necessary. Under normal conditions, that is, where the leg is properly set and the patient is in good health, and takes care of himself, that is all that is necessary. If

the leg is properly set and does not heal, the patient is bound to be either not in good condition or there is infection or some other condition. "There is not any reason except infection and the protruding or pressure of a broken bone against the flesh wound which would keep a wound from healing in an ordinarily healthy man."

Appellant testified that he had been practicing medicine for about eighteen years; that appellee's leg was set in his office on March 18, 1913. The fracture was a compound one, where the bones penetrated the soft part, went through the skin, underwear and trousers, which were overalls. Doctor Parks set the leg. Appellant advised appellee to have the leg amputated at the time. Appellant believed that the wound was infected because appellee's underwear and overalls were both dirty. Appellant found out about two weeks afterward that the leg was infected and treated the infected condition antiseptically. Appellant went out every day after the leg was set, and toward the latter part of March, he and Doctor Parks redressed and reset the leg. Appellant never heard any complaint until a long while afterward, when appellee seemed to have had a fall. So far as appellant could tell, the leg was just injured and not dislocated. Appellee made no complaint in regard to its being dislocated, and appellant did not believe that it was dislocated. Appellant treated appellee until about June 5, and left him, and as appellant was going away, he left appellee with Doctor Parks and spoke to Doctor Parks about him. The reason appellee's wound did not heal was because it was infected, and on account of the lack of nourishment to that part of the bone, and because it was a compound fracture. Appellant was appellee's family physician at the time. His general condition was anaemic.

Doctor Parks testified that he was present on the 18th of March, and set appellee's leg. Appellant administered the chloroform. The leg was perfectly adjusted at that time. He stated that he saw appellee again on the 24th of March, and the limb at that time was in perfect position. On the 30th of March, he again saw the appellee

and at that time the fracture had been dislocated, the bones not being perfectly adjusted. The witness did not see the case again until June 9, when he took charge of it at the request of appellant and appellee for the reason that appellant was going to take a vacation on account of his health. From witness's observation, appellant treated appellee's leg properly.

Witness further testified that appellant insisted on amputation when the leg was first set, but that appellee objected; that in his opinion, amputation was made necessary on account of the bones being misplaced, when the bones protruded through the skin, not having healing tissue sufficient to cover the bone. The healing was also prevented to begin with by infection. That appellant "used all the skill and care a physician is required to give in such cases."

The court gave certain instructions to which appellant objected, and which will be considered in the opinion. The jury returned a verdict in favor of appellee in the sum of $500. Judgment was entered for that sum, and this appeal has been duly prosecuted. Other facts stated in the opinion.

*Elmer J. Lundy,* for appellant.

1. It was error to permit appellee to testify as to the condition of his leg and as to the treatment given it, and that it was dislocated. These were matters for expert or opinion evidence only, by those qualified to give such evidence. 36 Ark. 117-124; 84 Md. 363; 35 Atl. 1094; 39 Miss. 732; 47 Pac. 360; Ellwell on Malpractice & Medical Evidence (4 ed.), 279.

2. Instruction 1, given by the court, is erroneous in that it attempts to cover matters not in issue, is not directed to any specific act of alleged negligence, and authorizes the jury to consider damages other than alleged in the complaint. It is abstract and misleading. 77 Ark. 567; 70 Ark. 441; 76 Ark. 599; 95 Ark. 597; 90 Ark. 378. It errs in its statement of the measure of damages. 14 Am. & Eng. Ann. Cases, 602.

Instruction 2 was erroneous in authorizing the jury to consider all bodily pain and suffering endured as well as future pain and suffering. This would authorize a finding for appellee for all damages which he had suffered from the result of the accident in the first instance. The third instruction clearly errs in assuming that appellant was not only under the duty to give instructions, but that he negligently failed to do so.

3. Instruction 3 requested by appellant correctly states the law and points out the specific acts as given in evidence, and it should have been given. 35 N. E. 521; 8 Ind. App. 264; 37 W. Va. 159; 38 Am. St. Rep. 17; 43 Ind. 343.

There was evidence that appellee undertook to treat his leg himself in violation of the physician's instructions, and if that is true, appellee is not entitled to recover. Instruction 5, requested by appellant, should, therefore, have been given. 56 Ind. 497; 95 Ind. 376; 115 Ind. 334; 109 Mass. 286; 9 Minn. 260; 91 Pa. 362; 36 Am. Rep. 668.

4. The evidence does not sustain the verdict. Where there is no allegation of incompetency of the physician, it will be presumed, in the absence of evidence to the contrary, that he used due care and skill. 70 Md. 162; 144 Mich. 632. See, also, Ellwell on Malpractice & Medical Evidence (4 ed.), 75-78.

*Minor Pipkin,* for appellee.

1. Appellant saved no exceptions to the ruling of the court in admitting appellee's testimony "as to the condition of his leg and as to the treatment given it, and that it was dislocated," except as to treatment, and upon this point appellee's testimony was harmless.

2. Instruction 1 is correct. It covers only the proof in the case, and no objection was made to the introduction of evidence tending to establish the negligent acts. 98 Ark. 529. If it was objectionable as to form, or verbiage, the defect should have been called to the court's attention by specific objection. 93 Ark. 589; 89 Ark. 522; *Id.* 404;

80 Ark. 574; 69 Ark. 632; 56 Ark. 563; 95 Ark. 220; 97 Ark. 643.

If it is not broad enough in its statement of the measure of damages, that defect is cured by the instruction which immediately follows it.  82 Ark. 64.

Instruction 2 is not open to the objection appellant urges that it authorized a finding for plaintiff for damages he suffered by reason of the accident in the first instance.  It is so drawn as to emphasize the fact that damages may be assessed only if any loss or suffering has accrued to plaintiff *by reason of defendant's negligence.*

Intruction 3 does not assume that the defendant was under a duty to instruct and negligently failed to do so. Moreover, when considered in connection with other instructions, as it should be, appellant's objection is entirely overcome.  76 Ark. 377.

3.  Instructions 3 and 5, requested by appellant, assume facts not in evidence and were properly refused.

4.  The evidence is sufficient.  The complaint will be treated as amended to conform to the proof as to negligence .  It is the duty of a physician to act with the utmost good faith toward his patient; and if he knows that he can not accomplish a cure, or that the treatment adopted will be of no benefit, it is his duty to advise his patient of these facts.  75 Mo. App. 594.

Wood, J., (after stating the facts).  (1)  The appellee testified in part as follows:  "The second visit Doctor Parks made Doctor Dunman dressed the leg and put new bandages on it.  There was nothing said at that time about my leg being out of place.  My leg got dislocated about the 1st of April."  The appellant moved to strike out the witness's evidence as to the dislocation for the reason that it was a matter for expert testimony.

The court did not err in refusing to strike the witness's evidence as to the dislocation.  This was not exclusively a matter of expert or scientific knowledge.  The appellee was competent to testify as to whether his limb was dislocated and out of shape after the same had been set.

Ordinary observation would discover whether a limb that had been properly set had been dislocated, especially where such dislocation was so marked as to cause the foot to be twisted, and the limb to be in an abnormal position. Moreover, the appellee, who was enduring the pain and experiencing the ill effects from the broken limb, was certainly competent to testify that the leg, after being set, had become dislocated.

(2) In its first instruction, given at appellee's instance, the court told the jury in part as follows: "That if the defendant failed to use reasonable care and diligence "either in the diagnosis, treatment or the giving of instructions to the plaintiff or his attendants, and that such failure resulted in the injuries to plaintiff's leg, or any of them, of which he complains, without the fault of the plaintiff, it will be your duty to find for the plaintiff, and to assess his damages at such sum as in your opinion, taking into consideration all the evidence in the case, will justly, fairly and reasonably compensate him for such injury or injuries."

Appellant made a general objection to the instruction, and he contends here that the same was erroneous because it authorized the jury to consider damages other than alleged in the complaint, and was therefore abstract, and for the reason also that it was erroneous in the statement of the measure of damages. The appellant's contention is not correct. The injuries of which "appellee complained" were that "the defendant, after setting said leg, so negligently, carelessly and unskillfully treated and cared for said leg that the same could not heal, but became inflamed and diseased to an unnecessary extent; the bones thereof to slip, override and overlap and the ends thereof to become dead so that the flesh can not adhere thereto, and said leg to become twisted, shortened and so deformed and diseased as to necessitate its amputation."

When the intruction is taken in connection with the allegations of the complaint, it could not have misled the jury, and it was not abstract so far as furnishing the jury a guide by which to determine whether or not the injuries

of which appellee complained, or any of them, were caused through appellant's negligence. The instruction was no broader than the allegations of the complaint, and the evidence on behalf of appellee which went to the jury without objection, warranted the instruction. It permitted the jury to find only for those injuries which appellee complained resulted from appellant's negligence. It was the duty of appellant, if he conceived that the instruction permitted recovery for injuries not set up in the complaint, to call the court's attention to same by a specific request. *St. Louis, I. M. & S. Ry. Co.* v. *Carter*, 93 Ark. 589; *Aluminum Co.* v. *Ramsey*, 89 Ark. 522.

The contention that the instruction is erroneous because it does not correctly define the elements constituting the measure of damages would be well taken if it were the only instruction on that subject. In *Dorris* v. *Warford*, 124 Ky. 768, the court held that ''the correct measure of damages for injuries caused by careless and unskillful treatment by a physician is reasonable compensation for the bodily pain and mental suffering, if any, endured by the patient, and the impairment of the plaintiff's ability to earn money,'' and that an instruction which in effect told the jury to find such damages as they believed from the evidence the patient had suffered by reason of the negligent treatment was erroneous. But the instruction under review must be taken in connection with the other instruction which immediately followed it on that subject; and the two together declared the law as to the measure of damages in accord with the doctrine announced by the Supreme Court of Kentucky in the above case, and which is also the doctrine of our own court.

(3)    Appellant does not contend that the instruction was erroneous in other respects, and it was not. A physician or surgeon is not required to exercise the highest skill possible. He is only bound to possess and to exercise that degree of skill and learning ordinarily possessed and exercised by members of his profession in good standing, practicing in the same line, and in the same general neighborhood or in similar localities. He must use rea-

sonable care in the exercise of his skill and learning, and act according to his best judgment in the treatment of his patients. 30 Cyc. 1570 "B," and cases in note; *Dorris* v. *Warford,* 124 Ky. 768, 14 Am. & Eng. Ann. Cas. 602, and note.

(4) In the second instruction the court told the jury as follows: "In assessing damages, you may take into consideration his loss of time, if any, resulting from defendant's negligence, his loss of earning power, if any, the bodily pain and suffering which he has been compelled to endure, and mental anguish, if any, which have resulted from such negligence, and any future suffering or inconvenience which he must suffer by reason of such negligence, if any."

In the first instruction the court did not undertake to define the elements constituting the measure of damages, but told the jury that the appellee would be entitled to such damages as they found from a consideration of all the evidence would fairly and reasonably compensate him for his injuries, and in the second instruction the court correctly defined the elements which constituted the measure of appellee's damages. They supplemented each other, and, taken together, are a complete and accurate statement of the law. *Satterwhite* v. *State,* 82 Ark. 64.

(5) In the third instruction the court, after telling the jury that the appellant had the burden of proving contributory negligence, further told the jury that "the plaintiff could not be held to have been guilty of contributory negligence in the absence of instructions which it was defendant's duty to give." Appellant urges that the instruction assumes that appellant "was not only under a duty to give instructions, but that he negligently failed to give instructions to the plaintiff." The instruction is not subject to the criticism which the learned counsel of appellant makes. The instruction, fairly construed, does not assume that it was the duty of the appellant to give instructions, or that he negligently failed to give instructions. This was still an issue for the determination of the jury.

The court, at the instance of the appellant, gave instructions which clearly told the jury that if appellee's condition was the result of his own negligence in failing to take proper care of himself by attempting to treat the injury himself, that their verdict should be for the appellant.

When the instructions on the subject of contributory negligence are considered together, they are not in conflict and the jury had the proper guide in the consideration of that issue.

The court did not err in refusing appellant's prayers for instructions numbered 3* and 5†. These instructions, as we view the evidence, were abstract. The idea contained in these instructions was sufficiently covered by the instruction which the court gave on contributory negligence at the instance of the appellant.

While we may differ with the jury as to the correctness of their finding on the issues of negligence and contributory negligence, we recognize that it was their province to determine these issues where there is a conflict of testimony. There is such conflict here, and therefore these issues were for the jury, and there was evidence to sustain their verdict. The judgment is therefore affirmed.

---

*3. If you find from the evidence that the plaintiff removed the splints and bandages placed thereon by the defendant, or removed the splints and bandages without the consent of the defendant, and that the action of the plaintiff in so removing the splints and bandages, or either of them, if he did remove them, contributed to his condition, you are instructed that plaintiff can not recover.

† 5. You are instructed that it is the duty of a patient to follow the instructions and advice of the physician employed by him, and if you believe from the evidence that the plaintiff did not follow the defendant's advice, and this failure contributed to his condition, plaintiff can not recover. (Reporter.)