[Civ. No. 11516.   First Dist., Div. Two.   Oct. 1, 1941.]

ALFONSO  SALES  et  al.,  Respondents,  v.  DAVID  E. BACIGALUPI, Appellant.

Geo. K. Ford and Simpson Finnell, Jr., for Appellant.

A. Brooks Berlin and Philander B. Beadle for Respondents.

DOOLING, J. *pro tem.*—Defendant, a physician, appeals from a judgment upon a verdict in favor of plaintiffs in the sum of $7500 in an action against him for malpractice.

On May 26, 1934, plaintiff, Angelina Sales, a 26 year old woman, was in her seventh month of pregnancy; during that day a nail in her shoe pierced the sole of her foot so that it pained her when she walked. Plaintiff removed her shoe and stocking, found blood where the nail had entered the flesh, and thereupon bathed the foot in a warm water and Lysol

solution. The injury did not bother her for the next few days and she carried on her usual household duties; on May 30, 1934, she even took a long walk to see a parade. On May 31, plaintiff felt a pain "which seemed to shoot upward" from her foot and she noticed a pimple on the top of her foot directly over the place where the nail had entered. Plaintiff burned the point of a needle with a match, pricked the pimple and then soaked her foot again in Lysol solution. Subsequently the pain become more severe and her husband coplaintiff, called defendant to treat the foot. When defendant arrived about 9 o'clock in the evening he found a dark red, hot area around the pimple about the size of a fifty cent piece, noticed some pus and saw that the foot was swollen. The evidence is in conflict as to whether defendant stated that it was blood poisoning and whether he advised hospitalization. He did not take her temperature but recommended that she soak the foot in epsom salts and warm water for 20 minutes every two hours. Defendant testified that there was no localized abscess at this time. Certain other San Francisco doctors testified in answer to a hypothetical question that there was no localized abscess at any time, that there would be no reason to make an incision and that the customary treatment was wet heat.

Plaintiff followed the treatment recommended by the defendant but the pain grew worse and the redness became darker, spreading from the ankle higher up the leg. Plaintiffs' witnesses testified that they telephoned to defendant at 2 a. m. and 5 a. m. to tell him that the patient was getting worse but defendant merely instructed them to continue with the same treatments; defendant had no recollection of such telephone calls. The doctor visited plaintiff about 6 a. m. at which time the foot was more discolored and the red area extended up the leg; defendant did not operate on the foot but prescribed a wash solution and opiates. At 8 a. m. he recommended the same treatments. At 10:30 a. m. defendant returned with Dr. Caglieri who looked at the foot and stated that it should be placed in a high position. Dr. Caglieri testified that there was no evidence of an abscess but that the foot was badly swollen and discolored; he saw no necessity for an incision. Defendant told plaintiffs that he would order an ambulance immediately to take the patient to the hospital, but the vehicle did not arrive that morning

in spite of Mr. Sales' telephone call to defendant at 11:30 a. m. At 1:30 p. m. plaintiff's baby was born prematurely without medical aid but the child died shortly thereafter. The ambulance arrived at 2 p. m. and plaintiff was taken to the City and County Hospital; she was in great pain, her foot was discolored and badly swollen and the redness ran high up her leg. The doctors who examined her found infection, early gangrene and chain streptococci; they testified that there was no evidence of an abscess or localization of pus but that the infection was general and hence there was no need for an incision. However, on cross-examination some of defendant's expert witnesses admitted in answer to hypothetical questions that the symptoms found on appellant's first call would indicate an abscess which if present should be drained, but qualified this admission by stating that if an abscess had been present at that time some evidence of it would have appeared when they later examined Mrs. Sales and that they found no evidence of abscess. Dr. Foote saw Mrs. Sales in the hospital on June 1, 1934; he testified that she had cellulitis of the right foot but no localized abscess or collection of pus. On June 2, 1934, Dr. Foote performed a guillotine amputation of the right lower leg and later some skin was transplanted to that leg. Plaintiff was discharged from the hospital on July 16, 1934.

Dr. Carr who made a laboratory examination of the amputated foot and leg testified that he found no evidence of an abscess in the foot at that time, and all of appellant's medical witnesses testified that if there had been an abscess in the foot on appellant's first call some evidence of it must have persisted to the time of the amputation.

Opposed to this medical testimony for appellant was the testimony of Dr. Ruedy of Oakland. Dr. Ruedy testified in answer to a long hypothetical question embodying the entire history of the case from the original injury to the foot to the amputation, including all the symptoms and appearance of the foot, that at the time of appellant's first call on Mrs. Sales there was an abscess present in the foot, and that in the exercise of that degree of care and skill ordinarily possessed and exercised by physicians and surgeons in San Francisco "the only method of choice (was) the prompt opening of the primary point of infection, draining the point of infec-

tion under antiseptic methods, and by local anesthesia.'' He further gave it as his opinion that the infection was afterwards generalized, spreading up the leg through the system and that this resulted in the loss of the baby and the necessity for the amputation, and that these would not have occurred if the abscess had been promptly opened and drained. On cross-examination he further testified that when the infection had become generalized all evidence of the existence of the abscess might disappear.

Because Dr. Ruedy had never practiced in San Francisco appellant claims that he was not qualified to testify to the method customarily used to treat such an infection in San Francisco. Dr. Ruedy had practiced in Oakland for many years. In view of the close proximity of the two cities and the metropolitan character of the entire area this sufficiently qualified him. (*Warnock* v. *Kraft*, 30 Cal. App. (2d) 1 [85 Pac. (2d) 505]; *Lewis* v. *Johnson*, 12 Cal. (2d) 558 [86 Pac. (2d) 99].)

Dr. Ruedy's testimony created a conflict in the evidence and is sufficient to support the verdict. The testimony of a medical witness in answer to a hypothetical question based on the facts in the record is sufficient to support a finding contrary to the testimony of other medical witnesses who have seen and examined the patient. (*Nielsen* v. *Industrial Acc. Com.*, 220 Cal. 118 [29 Pac. (2d) 852]; *Alaska Packers' Assn.* v. *Industrial Acc. Com.*, 1 Cal. (2d) 250 [34 Pac. (2d) 716].) Nor can the fact that Dr. Ruedy's testimony conflicted with all the other medical testimony affect this rule since the testimony of one credible witness if believed by the jury is sufficient to support a verdict. (*Sim* v. *Weeks*, 7 Cal. App. (2d) 28, 37–38 [45 Pac. (2d) 350].)

The question of Mrs. Sales contributory negligence in treating her foot as she did before calling appellant was for the jury. Dr. Ruedy's testimony supports the finding that appellant's negligent treatment was the proximate cause of the serious results that followed.

Appellant sought to cross-examine Dr. Ruedy on the following matters: (a) His failure to diagnose correctly Berger's disease in a patient under treatment by him with the consequent loss of a leg; (b) his knowledge of the drug aconitine. There was no contention that Berger's disease was a streptococcic infection and it was not pointed out how a

knowledge of aconitine would affect the case in hand. There was no error in sustaining objections to these questions. (*McCollum* v. *Barr,* 38 Cal. App. 411, 428 [176 Pac. 463].)

██ Dr. Ruedy was asked on cross-examination if during prohibition his federal license to prescribe liquors was not revoked. He answered: "No." Appellant then attempted to introduce a certified copy of an order revoking this license. The trial court properly sustained an objection to this. The credibility of the witness could not be attacked by evidence of specific wrongdoing, if this could be so construed, (27 Cal. Jur. 132–134) and the inquiry having been directed to a collateral matter, appellant was bound by the witness' answer. (27 Cal. Jur. 106, 107.)

██ The court gave an instruction on unavoidable accident which concluded "if you find from the evidence in this case that the injuries, if any, to plaintiff Angelina Sales could have been avoided by the exercise of ordinary care and skill, as herein defined, on the part of the defendant, then I instruct you that this was not an unavoidable accident, and the defendant, failing to exercise care and skill, if you find that he did so . . . may not avoid liability on that ground." The instruction was proper. Appellant and his witnesses testified that from the time he first saw Mrs. Sales nothing that he could have done would have prevented the injuries that followed.

Other specifications are already sufficiently answered.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 27, 1941.