506 P.2d 1105

R. Leroy GOEDECKE and Nancy Ann Goedecke, husband and wife, Appellants,

v.

Lillard C. PRICE and Martha Price, husband and wife, Appellees.

Lillard C. PRICE and Martha Price, husband and wife, Appellants,

v.

Willard L. BROWN and Joyce Brown, husband and wife, Appellees.

No. 2 CA–CIV 1281.

Court of Appeals of Arizona, Division 2.

March 8, 1973.

Rehearing Denied April 11, 1973.

Review Denied May 22, 1973.

---

Fish, Briney, Duffield & Miller by Richard Briney, Tucson, for appellants Goedecke.

Messing, Hirsh & Franklin by William Messing, Tucson, for appellees Price.

Lesher & Scruggs by D. Thompson Slutes, Tucson, for appellees Brown.

HATHAWAY, Chief Judge.

These appeals arise from a medical malpractice action brought by Lillard and Martha Price against Drs. Goedecke, Brown and their respective wives. Plaintiffs alleged professional negligence through misdiagnosis and mistreatment of fractured metatarsal bones of the right foot, causing pain, suffering and anxiety reaction, producing a loss of voice.

Four days into trial, the trial court directed verdicts in favor of the defendant doctors. On motion for new trial, the court reconsidered and reversed this ruling as to the Goedeckes on the basis that it had erroneously determined that the statute of limitations had run as to them. It reaffirmed its direction of verdict in favor of the Browns based upon insufficiency of the evidence. The Goedeckes appeal from the order granting a new trial and the Prices appeal from the same order denying a new trial as to the Browns.

Lillard Price, a welder, suffered the injuries while on the job on April 23, 1968. At the time he was employed at Newell Salvage and was injured while working on a 25 ton cylinder which rolled and caught his foot against the wall of the mill in which it was situated. He left work and went to Dr. Goedecke for treatment. X-rays were taken on the first visit and Dr. Goedecke interpreted them as negative for fracture. (In September, 1969 during a workmen's compensation examination, it was discovered that the second and third metatarsal bones had been fractured and had healed normally without displacement "and in perfect alignment"). Dr. Goedecke diagnosed and treated for an acute sprain and strain of the right ankle. The foot was "tape-supported, strap-supported", and Price was put on crutches. Ultrasonic treatments were administered on subsequent visits to reduce the swelling and the foot was retaped. On May 8, the doctor was satisfied with his patient's progress and said he could go back to work. Treatments were continued through application of an Ace bandage, hot moist soaks twice a day at home, and ultrasonic treatment.

Soreness of the foot continued and on June 10, Mr. Price complained of losing his voice and of having "nervous spells" in the form of "dizzy cold sweats". Additional x-rays were taken of the foot on August 18 and no abnormality was noticed. Since that patient's complaints continued, he was referred to Dr. Willard Brown, a doctor of Osteopathy, specializing in orthopedics. Dr. Brown concluded that the problem resulted from neuroma of the interdigital nerves and was unrelated to the fracture.

In September of 1969, while a workmen's compensation examination was in progress, Dr. Cortner observed through x-ray comparisons that Mr. Price had sustained fractures of the metatarsal bones. The fractures had theretofore remained undetected.

Mr. Price had subsequently seen various other practitioners of the healing arts, including medical doctors, psychiatrists, a neurosurgeon and a chest specialist. The principal difficulty centered on his loss of voice. His attempts to communicate were described as being at times inaudible.

The Goedeckes first contend on appeal that the trial court erred in determining that the statute of limitations had not run. They also contend that its direction of a verdict in their favor was supportable on the additional ground of insufficiency of the evidence as set forth in their motion. Since

the trial court gave as its reason for ordering the new trial the commission of error in ruling that the statutes of limitations had run, appellees contend that appellate review is limited to that question, citing Santanello v. Cooper, 106 Ariz. 262, 475 P.2d 246 (1970), where our Supreme Court stated that review of an order granting a new trial is limited to those grounds specified in the order. Reluctance to disturb the jury's verdict surfaces in *Santanello* as a prime reason for limiting review to the particular grounds specified for granting a new trial. That reason is absent in the posture of this appeal.

■ Also implicit in the order granting a new trial is the court's finding that the evidence was sufficient in view of the adverse ruling on appellants' motion for directed verdict which questions the sufficiency of the evidence. Additionally the statute of limitations problem requires our examination of the evidence presented. This we have done and find that the evidence is insufficient to withstand the motion for directed verdict. We will confine ourselves to that point since the statute of limitations problem appears to have become largely academic. We therefore consider the evidence bearing in mind our duty to view all competent evidence together with all inferences that may reasonably be drawn therefrom in the light most favorable to the plaintiffs. Jones Constr. Co. v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970); Morris v. Ortiz, 103 Ariz. 119, 437 P.2d 652 (1968). To establish malpractice it must be shown that the medical practitioner has failed to exercise the degree of skill of similarly situated physicians in the community. Stallcup v. Coscarart, 79 Ariz. 42, 282 P.2d 791 (1955); Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455 (1938); Butler v. Rule, 29 Ariz. 405, 242 P. 436 (1926). The standard is gauged by the care and skill exercised generally by physicians of ordinary care and skill in the community involved or in similar communities. Harris v. Campbell, 2 Ariz.App. 351, 409 P.2d 67 (1965).

■ Although the injury was misdiagnosed as a sprain or strain of the right ankle when actually undetected fractures were present, the treatment was endorsed by other expert witnesses as proper even when treating fractures. Expert testimony revealed that fractures of the type in question were difficult to detect and that even specialists could have missed discovering them. Furthermore, no showing was made that either the treatment given or misreading the x-rays constituted malpractice. Dr. Cortner, who discovered that the bones had been fractured, stated in response to inquiry relating to the treatment administered: "My feeling is that the treatment you have described would be within the normal standard of care." The undisputed evidence discloses that the fractures healed properly and that Mr. Price's problem was caused by a neuroma unrelated to the fractures.

We must conclude from the record that a cause of action for malpractice is not supported therein. Therefore, the order and judgment granting a new trial as to the Goedeckes is reversed and it is ordered judgment be entered for them with costs.

■ In considering the Prices' appeal challenging the direction of a verdict in favor of Dr. Brown, we view all competent evidence, together with all inferences that can be reasonably drawn therefrom in the light most favorable to the Prices. Jones Constr. Co. v. Noland, *supra*; Morris v. Ortiz, *supra*.

■ To withstand a directed verdict, they were required to produce evidence that the doctor misdiagnosed or mistreated Mr. Price and that injury resulted. In an attempt to establish negligence, they claim that the doctor neglected to examine the available x-rays. Even assuming that the doctor committed error in this failure, no evidence indicates that Mr. Price was injured thereby. Neither is there evidence that Dr. Brown's diagnosis of neuroma or the treatment administered was incorrect.

We agree with the trial court's conclusion that the evidence was insufficient to submit to the jury the issue of Dr. Brown's negligence. The judgment in favor of the Browns is affirmed.

KRUCKER and HOWARD, JJ., concur.